UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| **LAUREN BUXTON,** *on behalf of herself and all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> **FULL SAIL, LLC** d/b/a **FULL SAIL UNIVERSITY,** <br><br> *Defendants*. | Civil Case No.:  2:23-cv-148-TBM-RPM <br><br> **COMPLAINT - CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant, Full Sail, LLC d/b/a Full Sail University's ("Full Sail") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2. Full Sail is a private for-profit university that makes, or has made on its behalf, aggressive telemarketing calls soliciting its services.

3. These calls are made to individuals on the National Do-Not-Call Registry.

4. Full Sail continues to make these calls even after the called party requests that Full Sail cease calling.

5. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6. The TCPA also prohibits making telemarketing calls to a person who, like Ms. Buxton, has previously asked not to receive such calls and makes sellers like Full Sail liable for calls in violation of the TCPA's internal do-not-call rules.

7. Accordingly, Ms. Buxton brings this action on behalf of herself and two classes of

1

similarly situated individuals.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over Full Sail because Full Sail conducts business transactions in this District, made calls into this District as part of the business it conducts in this District, and targeted residents of this District with its illegal telemarketing campaign.

10. Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

11. Plaintiff Lauren Buxton ("Ms. Buxton") is, and at all times mentioned herein was, a citizen and resident of Laurel, Mississippi.

12. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Full Sail is, and at all times mentioned herein was, a Florida limited liability company.

14. Full Sail has offices located at 3300 University Blvd., Suite 218, Winter Park, Florida 32792.

15. Full Sail may be served via its registered agent James F. Heekin, Jr. located at 215 North Eola Drive, Orlando, Florida 32801.

16. Full Sail is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

17.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

18.  Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

19.  These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

20.  Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

21.  A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

22.  The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

23.  The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

24. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

25. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

26. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

27. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

28. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

29. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. §

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specifc do-

64.1200(d).

30. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

31. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

32. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

33. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

34. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate

---

not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

5

responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

35. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

36. Ms. Buxton is the sole and customary user of a cellular telephone number (XXX)-XXX-7801.

37. Ms. Buxton's cellular telephone number (XXX)-XXX-7801 is used for residential purposes and is not associated with a business.

38. Ms. Buxton's cellular telephone number (XXX)-XXX-7801 has been on the National Do-Not-Call Registry since June 20 2017.

39. On or about May 19, 2023, Ms. Buxton began receiving telephone calls from Full Sail or a third-party calling on Full Sail's behalf soliciting its services.

40. These calls came from changing ten-digit numbers, including but not limited to: (407) 863-2152, (321) 338-3125, (407) 890-1467, (407) 901-7741, (407) 919-6219, (407) 917-2945, (321) 587-7968, (321) 587-7968, (321) 587-7996, (321) 587-9019, .

41. When Ms. Buxton answered the phone, the caller advised that he/she was calling

from Full Sail and would attempt to solicit Ms. Buxton.

42. Ms. Buxton advised Full Sail that she was not interested and to stop calling.

43. Despite her requests not to be called, Ms. Buxton received calls from Full Sail on at least the following dates and times:

- May 19, 2023 at 4:39pm from (407) 863-2152;
- May 31, 2023 at 11:13am from (407) 863-2152;
- June 15, 2023 at 1:23pm from (407) 863-2152;
- June 22, 2023 at 2:43pm from (321) 338-3125;
- June 26, 2023 at 8:40pm from (407) 863-2152;
- June 27, 2023 at 2:02pm from (407) 863-2152;
- June 28, 2023 at 10:25am and 8:01pm from (407) 863-2152;
- June 29, 2023 at 11:42am from (407) 863-2152;
- June 30, 2023 at 10:37am from (407) 863-2152;
- July 6, 2023 at 11:47am from (321) 338-3125;
- July 13, 2023 at 7:45pm from (407) 863-2152;
- July 21, 2023 at 4:43pm from (407) 863-2152;
- July 24, 2023 at 5:48pm from (321) 338-3125;
- August 9, 2023 at 1:25pm from (407) 890-1467;
- August 16, 2023 at 1:10pm from (407) 901-7741;
- August 22, 2023 at 12:24pm from (407) 919-6219;
- August 29, 2023 at 3:56pm from (407) 917-2945;
- August 30, 2023 at 12:45pm from (407) 917-2945;
- August 31, 2023 at 12:09pm from (407) 917-2945;

- September 1, 2023 at 12:07pm from (407) 917-2945;

- September 6, 2023 at 12:36pm from (321) 587-7968;

- September 7, 2023 at 1:49pm from (321) 587-7968;

- September 8, 2023 at 1:34pm from (321) 587-7968;

- September 11, 2023 at 10:59am and 6:36pm from (321) 587-7996;

- September 12, 2023 at 11:01am and 4:58pm from (321) 587-7996;

- September 13, 2023 at 12:37pm from (321) 587-7996;

- September 14, 2023 at 10:48am, 2:54pm and 7:14pm from (321) 587-7996;

- September 15, 2023 at 10:43am from (321) 587-7996;

- September 18, 2023 at 11:20am and 6:02pm from (321) 587-9019;

- September 19, 2023 at 9:27am, 2:16pm and 6:17pm from (321) 587-9019;

- September 20, 2023 at 10:15am, 3:40pm and 7:41pm from (321) 587-9019;

- September 21, 2023 at 10:31am, 2:35pm and 7:40pm from (321) 587-9019.

44. Ms. Buxton did not provide prior express invitation or permission or consent for these telephone calls.

45. To the contrary, in response to the unwanted calls, Ms. Buxton repeatedly requested that they stop.

46. Full Sail, did not have written do-not-call policies or procedures at the time of the calls it made to Ms. Buxton and the classes defined below.

47. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Buxton after she directly asked not to be contacted.

8

48. Defendant's violations were negligent.

49. Alternatively, Defendant's violations were willful and knowing.

50. Ms. Buxton and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Defendant's telephone calls and text messages were annoying and a nuisance, and wasted the time of Ms. Buxton and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

51. Defendant used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

52. Defendant made two or more telephone solicitations to Ms. Buxton, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

53. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Buxton is entitled to $500 per call through 47 U.S.C. § 227(c).

54. Ms. Buxton is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

55. Defendant placed two or more telemarketing calls to Ms. Buxton, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

56. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Buxton is entitled to

$500 per call through 47 U.S.C. § 227(c).

57.     Ms. Buxton is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period from four (4) years prior to the filing of the Complaint.

("Policy Class").

(The Registry Class and the Policy Class are collectively referred to herein as the "Classes.")

59.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

60.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

61. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant or its agent made the telephone calls;
- The telephone numbers to which Defendant or its agent made telephone calls;
- The telephone numbers for which Defendant had prior express written consent;
- The purposes of such telephone calls; and
- The names and addresses of Class members.

62. The Classes are comprised of hundreds, if not thousands, of individuals.

63. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant (or someone acting on its behalf) make telemarketing calls;
- Whether Defendant (or someone acting on its behalf) obtains prior express written consent;
- Whether Defendant or the entities with which they contract makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;
- Whether Defendant had the required policies and procedures prior to making telemarketing calls;
- Whether Defendant's statutory violations were willful and knowing; and
- Whether Defendant should be enjoined from engaging in such conduct in the future.

64. Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without her prior express

written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

65. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

66. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

67. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

68. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

69. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

70. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

72. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

73. Plaintiff and the proposed Registry Class incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

74. Defendant made, or had made on its behalf, telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

75. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

76. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

77. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

78. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

79. Plaintiff and the proposed Policy Class incorporate the allegations of the foregoing paragraphs as if fully set forth herein.

80. Defendant made numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

81. Defendant did so despite not having a written policy pertaining to "do not call" requests.

82. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

83. Defendant did so despite not recording or honoring "do not call" requests.

84. Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

85. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

86. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

                                            LAUREN BUXTON, PLAINTIFF

By Counsel:   */s/Michael T. Ramsey*
Michael T. Ramsey, MSB #104978
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
MS Bar No. 104978
(228) 875-0572 Fax: (228) 875-0895
Mike@sheehanramsey.com


*/s/ Max S. Morgan*
Eric H. Weitz, Esquire*
Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

*Counsel for Plaintiff and
the proposed classes*

(*to seek admission *pro hac vice*)