United States District Court
Middle District of Florida
Orlando Division

**LAUREN BUXTON, individually and on behalf
of all others similarly situated**

       *Plaintiff,*

**v.**                    **NO. 6:24-CV-747-JSS-DCI**

**FULL SAIL, LLC and THE OFFICE**    **FIRST AMENDED CLASS**
**GURUS, LLC,**                        **ACTION COMPLAINT**

       *Defendants.*

---

## INTRODUCTION

1.    This action arises out of Defendant, Full Sail, LLC d/b/a Full Sail University's ("Full Sail") and Defendant The Office Gurus, LLC's ("TOG") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.    Full Sail is a private for-profit university that contracted with TOG to make aggressive telemarketing calls on its behalf soliciting its services.

3.    These calls are made to individuals on the National Do-Not-Call Registry.

4.    These calls continue even after the called party requests that Defendants cease calling.

5.    The TCPA prohibits making telemarketing calls to individuals who have

1

registered their telephone numbers on the National Do-Not-Call Registry.

6.     The TCPA also prohibits making telemarketing calls to a person who, like Ms. Buxton, has previously asked not to receive such calls and makes Defendants liable for calls in violation of the TCPA's internal do-not-call rules.

7.     Accordingly, Ms. Buxton brings this action on behalf of herself and two classes of similarly situated individuals.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.     This Court has jurisdiction over Defendants because Defendants are headquartered in this District, conduct business transactions in this District have have committed tortious acts in/from this District.

10.     Venue is proper in this District because Defendants reside within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## PARTIES

11.     Plaintiff Lauren Buxton ("Ms. Buxton") is, and at all times mentioned herein was, a citizen and resident of Laurel, Mississippi.

12.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13.     Full Sail is, and at all times mentioned herein was, a Florida limited

2

liability company.

14.     Full Sail has offices located at 3300 University Blvd., Suite 218, Winter Park, Florida 32792.

15.     Full Sail may be served via its registered agent James F. Heekin, Jr. located at 215 North Eola Drive, Orlando, Florida 32801.

16.     Full Sail is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     TOG is, and at all times mentioned herein was, a Florida limited liability company.

18.     TOG has offices located at 200 Central Avenue, Suite 2000, St. Petersburg, Florida 33701.

19.     TOG may be served via its registered agent Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

20.     TOG is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## **TCPA BACKGROUND**

21.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372

(2012) (citations omitted).

22.    Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

23.    These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

24.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

25.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

26.    The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

27.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

28.    Pursuant to this statutory mandate, the FCC established company-

4

specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

29.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

30.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

31.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

32.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

33.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures.

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way

47 C.F.R. § 64.1200(d).

34.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

35.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

36.    These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations.  A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

37.    Though some of these requirements mention "residential" telephones,

---

communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

38.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

39.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## **FACTUAL ALLEGATIONS**

40.     Ms. Buxton is the sole and customary user of a cellular telephone number (601)-XXX-7801.

41.     Her cellular telephone number includes an area code for Mississippi.

42.     Ms. Buxton's cellular telephone number (601)-XXX-7801 is used for residential purposes and is not associated with a business.

43.     Ms. Buxton's cellular telephone number (601)-XXX-7801 is primarily used for personal, family and household use.

44.     Ms. Buxton's cellular telephone number (601)-XXX-7801 is Ms. Buxton's only personal telephone number.

45.     Ms. Buxton is not a subscriber to another cellular telephone number.

46.     Ms. Buxton is not a subscriber to a landline telephone number.

47.     Ms. Buxton primarily relies on her cellular telephone number (601)-XXX-7801 to communicate with her family and friends.

48.     Ms. Buxton's cellular telephone number (601)-XXX-7801 has been on the National Do-Not-Call Registry since June 20 2017.

49.     On or about May 19, 2023, Ms. Buxton began receiving telephone calls from TOG on behalf of Full Sail that solicited Full Sail's services.

50.     These calls came from changing ten-digit numbers, including but not limited to: (407) 863-2152, (321) 338-3125, (407) 890-1467, (407) 901-7741, (407) 919-6219, (407) 917-2945, (321) 587-7968, (321) 587-7996, (321) 587-9019.

51.     When these numbers are called back, representatives answer the phone stating "Thank you for calling Full Sail University."

52.     These telephone numbers are associated with online telemarketing

complaints.[2]

53.    When Ms. Buxton answered the phone, the callers (TOG representatives) advised that they were calling from Full Sail and would attempt to solicit Ms. Buxton to attend Full Sail.

54.    Ms. Buxton advised the callers that she was not interested and requested that they stop calling her.

55.    Despite her requests not to be called, Ms. Buxton received calls from TOG on behalf of Full Sail on at least the following dates and times:

- May 19, 2023 at 4:39pm from (407) 863-2152;

- May 31, 2023 at 11:13am from (407) 863-2152;

- June 15, 2023 at 1:23pm from (407) 863-2152;

- June 22, 2023 at 2:43pm from (321) 338-3125;

- June 26, 2023 at 8:40pm from (407) 863-2152;

---

[2] https://lookup.robokiller.com/p/407-863-2152 (last accessed Jan. 3, 2024); https://lookup.robokiller.com/p/321-338-3125 (last accessed Jan. 3, 2024); https://directory.youmail.com/phone/321-338-3125 (last accessed Jan. 3, 2024)(including recordings of calls from Full Sail University); https://www.nomorobo.com/lookup/407-890-1467 (last accessed Jan. 3, 2024) (with recording); https://www.nomorobo.com/lookup/407-901-7741 (last accessed Jan. 3, 2024) (with recording); https://www.nomorobo.com/lookup/407-919-6219 (last accessed Jan. 3, 2024) (with recording); https://lookup.robokiller.com/p/407-917-2945 (last accessed Jan. 3, 2024); https://directory.youmail.com/phone/407-917-2945 (last accessed Jan. 3, 2024) (with recording stating calls are placed on behalf of Full Sail University for telemarketing purposes); https://www.nomorobo.com/lookup/321-587-7968 (last accessed Jan. 3, 2024) (with recording); https://www.nomorobo.com/lookup/321-587-7996 (last accessed Jan. 3, 2024) (with recording); https://www.nomorobo.com/lookup/321-587-9021 (last accessed Jan. 3, 2024  (with recording).

- June 27, 2023 at 2:02pm from (407) 863-2152;

- June 28, 2023 at 10:25am and 8:01pm from (407) 863-2152;

- June 29, 2023 at 11:42am from (407) 863-2152;

- June 30, 2023 at 10:37am from (407) 863-2152;

- July 6, 2023 at 11:47am from (321) 338-3125;

- July 13, 2023 at 7:45pm from (407) 863-2152;

- July 21, 2023 at 4:43pm from (407) 863-2152;

- July 24, 2023 at 5:48pm from (321) 338-3125;

- August 9, 2023 at 1:25pm from (407) 890-1467;

- August 16, 2023 at 1:10pm from (407) 901-7741;

- August 22, 2023 at 12:24pm from (407) 919-6219;

- August 29, 2023 at 3:56pm from (407) 917-2945;

- August 30, 2023 at 12:45pm from (407) 917-2945;

- August 31, 2023 at 12:09pm from (407) 917-2945;

- September 1, 2023 at 12:07pm from (407) 917-2945;

- September 6, 2023 at 12:36pm from (321) 587-7968;

- September 7, 2023 at 1:49pm from (321) 587-7968;

- September 8, 2023 at 1:34pm from (321) 587-7968;

- September 11, 2023 at 10:59am and 6:36pm from (321) 587-7996;

- September 12, 2023 at 11:01am and 4:58pm from (321) 587-7996;

- September 13, 2023 at 12:37pm from (321) 587-7996;

- September 14, 2023 at 10:48am, 2:54pm and 7:14pm from (321) 587-7996;

- September 15, 2023 at 10:43am from (321) 587-7996;

- September 18, 2023 at 11:20am and 6:02pm from (321) 587-9019;

- September 19, 2023 at 9:27am, 2:16pm and 6:17pm from (321) 587-9019;

- September 20, 2023 at 10:15am, 3:40pm and 7:41pm from (321) 587-9019;

- September 21, 2023 at 10:31am, 2:35pm and 7:40pm from (321) 587-9019.

56.    Ms. Buxton was present in the state of Mississippi when she received Defendants' calls as set forth above.

57.    Ms. Buxton did not provide prior express invitation or permission or consent for these telephone calls.

58.    To the contrary, in response to the unwanted calls, Ms. Buxton repeatedly requested that they stop.

59.    Defendants did not have written do-not-call policies or procedures at the time of the calls it made to Ms. Buxton and the classes defined below.

60.    Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Buxton after she directly asked not to be contacted.

61.    Numerous consumers also have taken to the internet to complaint about

Defendants' calling practices:



**Anita M**
⭐☆☆☆☆                                                          01/05/2022

I asked for information about this University for my son two years ago and have not successfully gotten them to stop calling me since. I have responded STOP to their texts, I have blocked phone numbers, I have asked them to stop calling me...but have they stopped? NO! I am convinced they use a robo-calling service because I block every number of theirs that comes through and each time a new number appears. This is an unethical business practice...and it is harassment. With this behavior they have ensured I will NEVER send my son to their school!

[3]



**Initial Complaint**            **Complaint Type:** Problems with Product/Service
09/18/2023                        **Status:** Resolved ❓

I totally resent getting a phone call for a 2nd Sunday morning when I am at church. I think you are very disrespectful even after I have expressed concern that explicitly not to call again because I am no longer interested in pursuing further education.

[4]



**Initial Complaint**            **Complaint Type:** Problems with Product/Service
12/12/2022                        **Status:** Resolved ❓

Basically, I applied for Full Sail 2 years ago but decided to no go through with attending there. I keep getting spam voicemails/calls and after a while I answered one and asked them to stop spam calling/voicemailing me and that I didn't want to attend they said ok. Not even a month after I called them I kept getting spam calls and voicemails and it's effecting my mental well-being.

[5]

---

[3] https://www.bbb.org/us/fl/winter-park/profile/business-school/full-sail-university-0733-200516/customer-reviews (last accessed Jan. 3, 2024).
[4] https://www.bbb.org/us/fl/winter-park/profile/business-school/full-sail-university-0733-200516/complaints (last accessed Jan. 3, 2024).
[5] *Id.*

12



**Initial Complaint**
07/01/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

Full Sail University has some of the most aggressive and invasive telemarketing of any university. I never consented to receiving their calls, yet they continuously harass me by calling several times a week, always from a different number to evade my blocks. Every time they call, the ID comes up as "Potential Spam." They flood my voicemail with pre-recorded messages, disrupt my day, and give me no option to stop these calls. *** is violating the Do Not Call registry and I'm sick of it. They should pay the fines or quit harassing people. As someone who just graduated from high school, this incessant spam does not make me want to attend *** at all. In fact, I stopped considering attending due to their spam. There are better ways to market your university than violating citizens' privacy and the law.

<sup></sup>[6]



**Initial Complaint**
04/18/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

They are completely harassing me to apply to their school. This is getting ridiculous and I'm tired of it. They have called me multiple times with multiple different phone numbers. If I wanted info and wanted to go to this school I would have answered. Leave me alone!! It's ridiculous to constantly call me from different numbers when I block numbers you're calling from.

[7]



**Initial Complaint**
02/23/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

They will not stop calling me. This has continued for months. I have blocked multiple numbers that they have left voicemails with (which unfortunately I still receive the voicemails, my phone just doesn't ring). They STILL call me from different numbers. I am not interested and just do not want to be called anymore, especially multiple calls a week or sometimes a day. It turns me so far away from wanting to go to this school and I can imagine it would be the same for others as well. It gives off very telemarketer/scam vibes and I want to not be contacted by them ever again.

[8]

62.    Defendants' violations were negligent.

---

[6] https://www.bbb.org/us/fl/winter-park/profile/business-school/full-sail-university-0733-200516/complaints?page=2 (last accessed Jan. 3, 2024).

[7] *Id.*

[8] https://www.bbb.org/us/fl/winter-park/profile/business-school/full-sail-university-0733-200516/complaints?page=3 (last accessed Jan. 3, 2024).

63.    Alternatively, Defendants' violations were willful and knowing.

64.    Ms. Buxton and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Defendants' telephone calls and text messages were annoying and a nuisance, and wasted the time of Ms. Buxton and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

65.    Defendants used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

66.    Because Defendants' calls constitute telemarketing, Defendants were required to obtain prior express written consent from the persons to whom Defendants made calls.

67.    "Prior express written consent" is specifically defined by statute as:

[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. §64.1200(f)(8)

68.    Ms. Buxton never provided Defendants with any consent, written or

otherwise.

69.     Defendants made two or more telephone solicitations to Ms. Buxton, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

70.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Buxton is entitled to $500 per call through 47 U.S.C. § 227(c).

71.     Ms. Buxton is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

72.     Defendants placed two or more telemarketing calls to Ms. Buxton, despite not having in place the required policies and procedures prior to making such calls.  This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

73.     Defendants placed two or more telemarketing calls to Ms. Buxton after she requested that Defendants stop calling her.

74.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Buxton is entitled to $500 per call through 47 U.S.C. § 227(c).

75.     Ms. Buxton is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

76.     Defendant TOG is directly liable for the calls it placed on behalf of Defendant Full Sail.

77.     Defendant TOG, on behalf of Defendant Full Sail, directly initiated the unlawful calls to Ms. Buxton and the class members and is thus directly liable for

violating the TCPA.

78.     All of the calls alleged herein were made to Ms. Buxton and the class members in order to drive them to Defendant Full Sail for the purpose of enrolling in a program at Full Sail.

79.     Defendant Full Sail admits that Defendant TOG placed the calls at issue in this case on its behalf.  *See* ECF No. 8 at 5 ("Moreover, any calls made on behalf of Full Sail were likely made by a nonparty, The Office Gurus, LLC, a Florida limited liability company.");  ECF No. 9-1 at ¶ 6 ("all of the calls alleged to have been made in the Complaint would have been made by [TOG]."

80.     Defendant Full Sail is liable for each of the calls under one or more of the following theories of liability: (1) Actual Authority, (2) Apparent Authority, (3) Ratification.

## ACTUAL AUTHORITY

81.     The TCPA incorporates federal common law agency principles.

82.     To the extent Full Sail outsourced the act of executing the unlawful calls to TOG, such an act would not and does not absolve Full Sail from liability under the TCPA.

83.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised

16

third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("*Dish Network*").

84.     Upon information and belief, Full Sail signed an agreement[9] with TOG, expressly authorizing and directing TOG to call potential students and promote Full Sail and Full Sail's services in accordance with specifications largely dictated by Full Sail.

85.     Upon information and belief, Full Sail (1) provided and/or reviewed TOG's scripts, (2) allowed and authorized TOG to use its trade name, (3) allowed and authorized TOG's representatives to state they were calling from Full Sail University;

---

[9] Prior to filing this Amended Complaint, Ms. Buxton requested that Full Sail provided a copy of its agreement with TOG. Full Sail did not respond to Ms. Buxton's request.

and (4) provided TOG with proprietary information and specific information about Full Sail University and its degree programs.

86.    Upon information and belief, Full Sail maintained the ability and right to control TOG's calls and communicated with TOG about the Better Business Bureau complaints that it received regarding TOG's calls made on Full Sail's behalf.

87.    By signing contracts making TOG an authorized agent—expressly or impliedly—to execute unlawful calls to Plaintiff and Class members, Defendants are both liable for violations of the TCPA.

88.    During all relevant times, Full Sail knew that TOG was engaged in marketing practices constituting unlawful calling to direct consumers to Full Sail and its services, in accordance with the specifications and contractual provisions agreed to by Full Sail and TOG.

89.    Full Sail accepted, did not object to, and benefitted from TOG's violations of the TCPA.

90.    Full Sail directed and controlled the conduct of TOG by, *inter alia*, instructing and closely controlling the content of the calls and contacts with Plaintiff and other call recipients, controlling and monitoring the direction, and manner of their conduct on behalf of Full Sail, establishing and enforcing guidelines and specifications of TOG's activities on behalf of Full Sail, retaining rights to modify, amend, or withdraw TOG's authority to act on behalf of Full Sail in making the unlawful calls, compensating TOG for engaging in conduct that violated the TCPA, knowing that

18

TOG engaged in conduct that violated the TCPA or instructing TOG, impliedly or expressly, not to disclose information that, if known by Full Sail, would establish Full Sail's knowledge that the Referral Partners were engaged in conduct violating the TCPA, and providing feedback to TOG regarding changes in practices.

91.    Due to the anonymous/private nature of the subscriber information for the outbound telephone numbers, Ms. Buxton has no access to information to identify the exact relationship between Full Sail and TOG who is the anonymous public facing arm of Full Sail's unlawful calling scheme.

92.    However, Plaintiff is not required to know this information at the pleading stage. *Dish Network* states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." 28 F.C.C. Rcd., at 6592–93 (¶ 46).

## APPARENT AUTHORITY

93.    *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the [third party] access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's

telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592 (¶ 46).

94.     Upon information and belief, Full Sail allowed TOG to enter consumer information into its systems as well as to use Full Sail's proprietary information and literature to share with consumers during the calls.

95.     Full Sail gave TOG the authority to use its trade name, trademark, and service mark in a way that made it appear to a consumer that Full Sail was in fact the entity calling itself and approved of the calls.

96.     TOG representatives did not independently identify themselves to Ms. Buxton and the other Class members or provide their contact information – instead providing only references to Full Sail.

**RATIFICATION**

97.     Full Sail knowingly and actively accepted business and contacts with consumers that originated through TCPA-violating calls placed by TOG.

98.     Full Sail ratified TOG's TCPA violations by knowingly accepting the benefit of new contacts with consumers despite the fact that these consumers were generated through conduct that violates the TCPA.

99.    Alternatively, Full Sail ratified TOG's TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether TOG was complying with the TCPA, or create reasonable suspicion that TOG did not comply with the TCPA, willfully turning a blind eye to those facts, and accepting the benefit of new consumer contacts despite the fact that they were generated through conduct that violates the TCPA.

100.    Full Sail ratified the TCPA violations of TOG by being willfully ignorant of the violations or by being aware that such knowledge was lacking and accepting the benefits of the TCPA violations.

101.    Full Sail has received numerous complaints regarding the conduct of TOG and Full Sail refuses to alter its business practices at all in response.

102.    Full Sail knew that TOG engaged in conduct that violated the TCPA and generated numerous consumer complaints because of their telemarketing practices, but failed to terminate their relationship with TOG and continued to do business with them.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Defendants placed  two or more telemarketing calls that marketed the services of Full Sail University in a 12-month period when the telephone number to which the telephone calls were made was on the

National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendants placed  two or more telemarketing calls that marketed the services of Full Sail University in a 12-month period from four (4) years prior to the filing of the Complaint after either of Defendants records indicate the called party requested the calls stop and/or to be added to Defendants' internal do-not-call list.

("Policy Class").

(The Registry Class and the Policy Class are collectively referred to herein as the "Classes.")

104.    Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

105.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

106.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendants made the telephone calls;

- The telephone numbers to which Defendants made telephone calls;

- The telephone numbers for which Defendants had prior express written consent;

- The purposes of such telephone calls; and

- The names and addresses of Class members.

107.    The Classes are comprised of hundreds, if not thousands, of individuals.

108.    There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendants make telemarketing calls;

- Whether Defendants obtain prior express written consent;

- Whether Defendants make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendants had the required policies and procedures prior to making telemarketing calls;

- Whether Defendants continued to call individuals that requested that the calls stop and/or to be added to Defendants' internal do-not-call list;

- Whether Full Sail is vicariously liable for the calls TOG placed on its behalf;

- Whether Defendants' statutory violations were willful and knowing; and

- Whether Defendants should be enjoined from engaging in such conduct in the future.

109.   Plaintiff is a member of the Classes in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without her prior express written consent, after she asked Defendants to stop, and while her telephone number was on the National Do-Not-Call Registry.

110.   Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

111.   Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

112.   Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

113.   Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

114.   Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

115.   The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

116.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

117.    Defendants violated 47 U.S.C. § 227(c) by making telephone solicitations to Plaintiff's and putative Registry Class Member's telephone numbers as described above in Paragraphs 40 through 79.

118.    Defendants made telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

119.    Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

120.    Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

121.    Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

122.    Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

123.   Defendants violated 47 U.S.C. § 227(c) by making numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers as described above in Paragraphs 40 through 79.

124.   Defendants did so despite not having a written policy pertaining to "do not call" requests.

125.   Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

126.   Defendants did so despite not recording or honoring "do not call" requests.

127.   Defendants made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

128.   Defendants made these calls after their records reflect that Plaintiff and the putative class members requested that Defendants stop calling and/or to be added to Defendants' internal-do-not-call list.

129.   Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

130.   Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B.      An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages; and

F.      Such other and further relief that the Court deems reasonable and just.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated:        April 30, 2024

/s/ Joshua H. Eggnatz
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
EGGNATZ | PASCUCCI
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
JEggnatz@JusticeEarned.com

*Local Counsel for Plaintiff*

/s/ Max Morgan*
Max S. Morgan, Esq.
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

*Lead Counsel for Plaintiff and the putative class*

Michael T. Ramsey
(Pro Hac Vice forthcoming)
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
Tel: (228) 231-0715
mike@sheehanramsey.com

*admitted pro hac vice

*Counsel for Plaintiff and the putative class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of April 2024, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Middle District of Florida and served a true and correct copy thereof on all counsel of record using the CM/ECF System.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

## SERVICE LIST

Gregory W. Hebert, Esq.
450 S. Orange Ave.
Suite 650
Orlando, FL 32801
herbertg@gtlaw.com

Elizabeth Hadley, Esq.
300 West 6th St.
Suite 2050
Austin, Tx 78701
Elizabeth.hadley@gtlaw.com

*Counsel for Defendant Full Sail, LLC*